## In re HAMLIN TERRACE HEALTH CARE CENTER, Debtor.

### Bankruptcy No. 94–05487–6J7.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Dec. 20, 1996.

Leigh R. Meininger, Orlando, FL, for Debtor.

James C. Orr, Titusville, FL, Chapter 7 Trustee.

*ORDER CONVERTING CASE*
*TO CHAPTER 7*

KAREN S. JENNEMANN, Bankruptcy Judge.

This case came on for hearing on the Amended Order Denying Confirmation (Doc.

No. 520) which denied confirmation of the Fourth Amended Plan of Reorganization filed by the debtor, Hamlin Terrace Health Care Center (the "Debtor"), and scheduled a hearing, held on December 3, 1996, to consider whether conversion or dismissal of this case is in the best interest of creditors. The Debtor seeks to dismiss this case pursuant to the terms of a proposed Distribution and Dismissal Agreement (the "Dismissal Agreement").

In the Dismissal Agreement, upon dismissal, the Debtor would pay (i) $60,000 to Cathedral Park Partners [1] ("CPP") in partial payment of CPP's administrative claim, (ii) all other administrative claims in full with the exception of remaining administrative claims payable to CPP, Cathedral Park Managers ("CPM"), and fees owed to the professionals retained by the Debtor, (iii) 40% of all amounts owed to unsecured creditors other than the unsecured claim due to CPP, and (iv) all allowed amounts awarded to the two examiners appointed in this case as well as any fees ultimately allowed to John R. Stump, Esq. Funds to make these payments will come from $300,000 currently held by the Debtor and $150,000 to be contributed by one of the Debtor's general partners.

Numerous parties have filed the following pleadings supporting the Debtor's request to dismiss this case: Debtor's Support for Dismissal of Hamlin's Case in Accordance with the Proposed Distribution and Dismissal Agreement and Opposition to Conversion (Docs. No. 523 and 534A), Support by Unsecured and Secured Creditors for Dismissal Rather than Conversion (Doc. No 527), and Support by AFL–CIO Hospital and Nursing Home Counsel for Dismissal (Doc. No 526), Notice of Position of CPP Supporting Dismissal Rather than Conversion of This Case (Doc. No 532), and Statement of Unsecured Creditors of Cathedral Park Partners with Respect to Pending Motion to Dismiss or Convert (Doc. No. 533). In addition, Mr. Stump acting on behalf of a number of unsecured and administrative creditors orally supported dismissal [2] at the hearing.

■ Three parties oppose the Debtor's desire to dismiss this case—the United States Trustee, the CPP Trustee, and the New York State Department of Social Services [3] (Doc. No. 529). All of these parties contend that conversion, not dismissal, is in the best interest of the Debtor's creditors.

In this case, the Debtor has demonstrated it is unable to confirm a plan of reorganization. Section 1112 of the Bankruptcy Code provides that the decision whether to convert the case to a Chapter 7 case under the supervision of a Chapter 7 Trustee or to dismiss the case and relieve the Debtor of further court supervision is to be determined based solely on the "best interest of creditors and the estate."

In order to apply this test, an understanding of the three categories of creditors involved in this case is necessary. The position of interest holders is irrelevant unless the estate is solvent which is not the case here.

■ The first category of creditors are the Debtor's secured creditors—American Venture Group, Inc, CPM, and TLSGXT (as Trustee) (collectively, the "Secured Creditors"). Substantial questions have arisen

---

1. CPP is itself a debtor in a pending Chapter 11 case, case number 92–05843–6C1. A Trustee, Jules Cohen (the "CPP Trustee"), was appointed in that Chapter 11 case and is vested with the primary responsibility for making all decisions on behalf of CPP.

2. Mr. Stump previously had filed a Joint Motion by Unsecured and Administrative Creditors to Convert Case to Chapter 7 (Doc. No 500) on behalf of his clients. In light of his support for the Debtor's Dismissal–Agreement, the Court concludes that the Motion to Convert is now moot.

3. The New York State Department of Social Services is not a creditor in this case. Instead, the State of New York may owe money to the Debtor. Given the fact that the State of New York is not a creditor and has an opposing position to the Debtor and its estate, any position taken by the State of New York is irrelevant in determining whether dismissal or conversion is in the best interest of the creditors in this case and shall not be considered.

during the course of this Chapter 11 case regarding the validity of the liens held by the Secured Creditors, their close relationship to the Debtor, and the propriety of a large payment they received during the course of this case. Indeed, two examiners have been appointed during the course of this case to review these issues. The Secured Creditors have consented to the Dismissal Agreement and obviously want the case dismissed to avoid any further challenge to their secured position. In any event, due to their obvious self interest which is contrary to the interests of the other unsecured creditors in this case, the support of the Secured Creditors for dismissal is not persuasive.

■ The second category of creditors in this case consists of creditors holding unpaid, post-petition administrative claims. Under the Dismissal Agreement, all administrative creditors will receive payment in full *except* for CPP, CPM and certain professionals retained by the Debtor. The administrative claimants receiving immediate payment clearly fare better by dismissal than conversion because they will be paid sooner and without risk. CPM and the unpaid administrative professionals have agreed to the Dismissal Agreement.

However, CPP, the largest unpaid administrative creditor in this case, will receive a payment of only $60,000 upon dismissal. Although the exact amount of CPP's administrative claim is not yet determined, the claim, by all parties' assessment, substantially exceeds $60,000. The CPP Trustee opposes dismissal because CPP's administrative claim is not paid in full while junior, unsecured creditors will receive substantial distributions under the Dismissal Agreement.

The Debtor urges the Court to ignore this dramatic alteration in the distribution priorities required by the Bankruptcy Code because, even though the CPP Trustee seeks a conversion of this case, the underlying creditors in CPP's Chapter 11 case support dismissal. CPP has three unsecured creditors and a number of equity interest owners all of whom have filed pleadings endorsing the approval of the Dismissal Agreement. However, CPP also has a primary secured creditor who urges conversion. The Debtor then urges the Court to heed the support for dismissal raised by CPP's equity interest holders and unsecured creditors and to ignore the objection to dismissal framed by the secured creditor.

The Court intends to ignore not only the objection of CPP's secured creditor but also the support for dismissal framed by CPP's unsecured creditors and equity interest holders. It would be unfair and inappropriate to consider the views of some classes of CPP's creditors but to ignore the positions of other creditors. The only party authorized to speak on behalf of CPP is the CPP Trustee, and he opposes dismissal. The CPP Trustee asserts that CPP is entitled to receive payment on its administrative claim prior to distribution to the Debtor's unsecured creditors and, because the Dismissal Agreement is contrary to this priority distribution scheme, it is in the best interest of CPP to convert this case rather than permit dismissal.

■ The third category of claims in this case is that of unsecured creditors with claims of approximately $271,000. In addition, CPP also has a large unsecured claim which it values at approximately $2 million. Under the Dismissal Agreement, the unsecured creditors other than CPP will receive distributions of 40% of the amounts of their claims in exchange for agreeing to release the Debtor from any additional liability. The payments are to be made immediately and without risk.

Unsecured creditors with claims totalling approximately $40,000 and represented by Mr. Stump support the Dismissal Agreement. In addition, one of the Secured Creditors, CPM, apparently solicited support for dismissal from other unsecured creditors who are not represented and who did not attend the hearing. CPM's solicitation was not approved. The information transmitted was not authorized or determined to be adequate. The Court has no way to assess whether the information relayed to these

creditors was sufficient to permit them to make a reasoned decision to support conversion or dismissal. The procedure was ill-timed, unauthorized, and completely improper. Moreover, each of the forms submitted by CPM constitute inadmissable hearsay. The Court completely disregards these unapproved "Support for Dismissal" forms obtained from these creditors.

■ However, certain unsecured creditors represented by Mr. Stump clearly support dismissal. It is difficult to determine whether these unsecured creditors will receive more or less under the Dismissal Agreement than if the case were converted. Under the Dismissal Agreement, the Debtor will contribute $300,000 and the Debtor's general partner will contribute an additional $150,000. From these funds, the unsecured creditors, other than CPP, are guaranteed payment of 40% of their claims.

The unsecured creditors however may fare better if the case were converted. The Debtor has at least three outstanding claims, one against the New York State Department of Social Services, another against BNTH, Inc., and the last against Millard Fillmore Hospitals. The Debtor has given a number of different values for these claims during this case, often depending on the Debtor's purpose at that particular moment. In all likelihood, these claims have substantial but currently unascertained value. The Court reaches this conclusion largely due to the extreme effort the Debtor and other related entities have made to dismiss rather than convert this case. If these claims had minimal value, why would the Debtor fight conversion so strenuously? Assuming the claims do have value, the unsecured creditors, as well as unpaid administrative creditors, are entitled to participate in any recovery.

The unsecured and administrative creditors also are entitled to seek judgments against the two general partners of the Debtor for any unpaid claims. Although counsel have intimated that these general partners are "judgment proof", no convincing evidence supports this conclusion. Lastly, unsecured and administrative creditors are entitled to any recoveries obtained from the Secured Creditors in the event it is determined that any payments they received were improper.

At this point, we do not know that any of these recoveries will materialize. Certainly, any distribution to unsecured creditors will be significantly delayed to permit the completion of litigation. However, the value of these claims appear significant. The benefits should flow to the Debtor's unsecured and administrative creditors and not to the Debtor and its insiders. The proper person to pursue these claims is a Chapter 7 Trustee. To the extent appropriate, the Chapter 7 trustee can retain Debtor's counsel to assist in the recovery efforts, to reduce any loss of knowledge, and to prevent duplicative costs and expenses. Therefore, even though a number of unsecured creditors have indicated they support dismissal of this case because dismissal guarantees they will receive at least some portion of their claim in the near future, the Court concludes that their best interest is served by conversion.

■ Conversion also serves the general purposes and policies underlying the Bankruptcy Code. This Chapter 11 case was initiated on October 20, 1994 (Doc. No. 1). The Debtor has enjoyed the protections and benefits of the Bankruptcy Code for over two years. Now, the Debtor seeks to dismiss this case and avoid the appointment of a Chapter 7 Trustee to review the Debtor's claims, assets and liabilities. Sufficient questions have arisen during the course of this case to make the Court question the integrity of certain of the Debtor's actions. Debtors should not be able to enjoy the benefits of bankruptcy protection but escape the scrutiny of its review.

Moreover, in the Dismissal Agreement, the Debtor totally ignores the priority distribution scheme required by the Bankruptcy Code. For example, the Debtor has not paid its administrative claims during the course of this Chapter 11 case and now seeks to leave these claims unpaid but advance distributions

to its unsecured creditors.[4] Such behavior should not be permitted.

In summary, all of the parties supporting dismissal seek to obtain some advantage not condoned by the Bankruptcy Code. The advantages are obtained at the expense of the administrative creditors and possibly to the loss of the unsecured creditors. Plain legal prejudice will result. A Chapter 7 trustee should be appointed to complete the administration of this case. Ultimately, he or she may conclude that dismissal is appropriate, but the creditors deserve such a review. Accordingly, it is determined that the best interest of the creditors and this estate is served by the conversion of this case to a Chapter 7 case, and it is

ORDERED:

1. Pursuant to 11 U.S.C. § 1112, this case is converted to Chapter 7 of the Bankruptcy Code.

2. Any and all authorizations previously given to the debtor-in-possession by statute, rule, or order to operate or manage its business and property, to use property of the estate for personal purposes, and to fix and pay compensation for post-petition services performed by the debtor in the business are rescinded.

3. All applications for administrative fees and expenses for parties other than the trustee must be filed on or before **January 13, 1997.**

4. The debtor-in-possession in the superseded Chapter 11 case shall file on or before **January 13, 1997,** a full report and account including a current inventory and a separate schedule listing all unpaid debts incurred after the commencement of the Chapter 11 case.

5. The debtor-in-possession in accordance with F.R.B.P. 1019(5) shall file a schedule of all properties acquired after the commencement of the Chapter 11 case, but before the entry of the order or confirmation (if applicable); a schedule of debts occurred after confirmation but before the entry of the order of conversion (if applicable); and a schedule of all executory contracts entered into or assumed after the commencement of the Chapter 11 case, but before the entry of this conversion order.

6. A status conference is scheduled in this case for **2:00 p.m. on January 30, 1997.**

DONE and ORDERED.

4. In response, the Debtor initially argues that the monies used to pay unsecured creditors will come from funds advanced by the Debtor's general partners, not from property of the estate. This argument is not persuasive. First, all creditors, including administrative creditors, are entitled to benefit from payments made by general partners to pay partnership debts. Second, even accepting the Debtor's argument as to payments received by the unsecured creditors, the Debtor ignores the fact that some administrative creditors are receiving payment in full while others, CPP, will receive only a small percentage of its administrative claim.